### Haskins v. Patterson & Ballentine.

The difference between a pledge and a mortgage of personal property.
The effect of a power to sell contained in a pledge.
The notice to be given by the pledgee is not of the time and place of the sale, but of an intention to sell, in enforcement of the lien, unless the debt is paid.

This was an action of trover for a number of beer barrels and casks. A plea of not guilty was put in.

Haskins v. Patterson & Ballentine.

To secure a debt owing by him to the defendants, the plaintiff entered into an agreement with them whereby the property then in the possession of the defendants was deposited and pledged with them, to be held and retained by them as a pledge and security for his indebtedness, with leave, on default in payment, to sell at public or private sale, and pay the debt and expenses; and that, in the mean time, the defendants might use the property for a compensation agreed upon.

The debt becoming due, the defendants gave notice that unless it was paid they should sell the property, which they accordingly did, at public auction. The property was sold in one lot, and was afterward bought by the defendants, of the purchaser at the auction, at an advance of five per cent.

The court, on the trial, ordered a verdict for the plaintiff, subject to the opinion of the court, etc.

*A. L. Jordan*, for defendants, moved for a new trial.

1. The instrument under which the defendants held the property was a mortgage. (*Langdon* v. *Buel*, 9 Wend. 80; *Reeves* v. *Capper*, 5 Bing. N. C. 136, 141; *Ferguson* v. *The Union Furnace Co.*, 9 Wend. 345; 1 Domat Civil Law, 330; 2 Bl. Com. 137.)

2. Being a mortgage, on default in payment the property vested absolutely in the mortgagees, and trover would not lie. (*Patchin* v. *Pierce*, 12 Wend. 61.)

3. But, if not a mortgage, it was more than a pledge, because of the power to sell contained in it, by virtue of which title might pass out of the pledger, and thus deprive him of the right to maintain trover. (*Brown* v. *Strong*, 8 J. R. 96; *Sargeant* v. *Blunt*, 16 J. R. 74; *Cairns* v. *Bleeker*, 12 J. R. 304; *Morris* v. *Simpson*, 4 Wend. 610.)

4. But even if the defendants were liable in trover, they had a right to recoup their debt against the value of the property. (Story on Bail. § 349; *Russell* v. *Butterfield*, 21 Wend. 300; *McLean* v. *Walker*, 10 J. R. 471.)

*Angus, contra:* It was a pledge, and notice to the pledger

16—vol. 1.

of the sale was necessary. (4 Kent's Com. 139; 2 J. C. R. 100; 12 J. R. 150; Story on Bail. §§ 318, 319.)

*The Circuit Judge:* In this action it is sufficient if the defendants show title out of the plaintiff. If the agreement between the parties was a mortgage, then the defense was made out, for it is well settled that in such case the legal title passes to, and is vested in, the mortgagee. (Story on Bail. § 287; *Langdon* v. *Buel*, 9 Wend. 80; *Patchin* v. *Pierce*, 12 Wend. 61.)

In the case of a pledge, however, it is different; the legal title, until a sale on default of payment or redemption, continuing in the pledger. (Story on Bail. § 287; *Cortelyou* v. *Lansing*, 2 Caines' Ca. in Er. 200; 2 Kent's Com. 581.)

The pawnee has, indeed, a qualified property in the article pledged, but upon a tender to him of the debt, he becomes divested even of that qualified property, and becomes a wrong-doer if after that he persists in retaining the articles pledged, from the pawner, and for that wrong trover may be brought. (Story on Bail. §§ 339, 341; *Coggs* v. *Bernard*, 2 L. Ray. 936.)

The right, therefore, of the plaintiff to recover in this suit, depends on the question whether the arrangement between these parties was a pledge or a mortgage.

The essential difference between them as to matter of right, is, that in the one case the title passes, and in the other it does not. But the difference, in substance and fact, is that in the case of a pawn or pledge, the possession of the articles must pass out of the pawner; in the case of a mortgage it need not. And in determining whether an agreement is a pledge or a mortgage, regard must be had to these two considerations.

The language of this agreement is, that "the following goods and chattels," etc., "are deposited and pledged with them (the defendants) to be held and retained by them as a pledge and security for all and every sum and sums of money," etc.

It is true that the use of the word "pledge" does not, of

itself—*ex vi termini*—settle the character of the transaction; for where it is the clear intent of the parties that the possession of the goods and chattels shall remain in the debtor, until default of payment, it will be regarded as a mortgage, even if the word "pledge" is used. (*Langdon* v. *Buel*, 9 Wend. 80; *Reeves* v. *Capper*, 5 Bing. N. C. 136; *Ferguson* v. *U. Furnace Co.*, 9 Wend. 345.) And the reason is, because it possesses one of the distinctive features of a mortgage, viz.: possession in the debtor. But where the word "pledge" is used, and the nature of the transaction is in conformity with the character of a pledge, in this material respect, that the possession is to be in the creditor, the word is accurately used, and must control, both as expressive of the intent of the parties and of the legal effect of their agreement.

In this case the parties have been particular not only to transfer the possession to the creditor, but to declare that the goods, etc., have been *deposited and pledged*, and are to be *held and retained* as security, etc., thus grouping together in a few words every characteristic of a pledge, so clearly that it would be difficult to find words that should express a contract of pledge more distinctly.

Jones on Bail. 117, defines a pledge as a bailment of goods to be kept till the debt is discharged. Pothier, as a contract by which a debtor gives his creditor a thing to detain as security; and Story on Bail. § 286, as a thing given in security for a debt.

The other characteristic of a pledge is preserved with equal care by the agreement, namely, the continuance of the legal title in the debtor. For it is not only stipulated that the defendants may sell the goods, etc., at public or private sale, or such parts as may be necessary to raise the required amount, with interest and expenses, all of which is precisely the right of the pledgee, but it also agreed that they may use the goods, etc. All this is expressed in the agreement as a grant of authority to the pledgees, and would not be necessary, so far as their power is concerned, if it had been a mortgage, and the title had passed. For the power would have passed as an

incident of the title, and any such stipulations would have been useless, except in the form of restrictions upon the absolute right of ownership.

In every essential particular, then, this was a pledge, and not a mortgage; it possesses every feature which distinguishes the one from the other, and is to be governed by the rules established as to pledges.

One of those rules, and the one material to the decision of this case, is that the pledgee cannot sell the articles pledged, unless by order of a court of equity, or after notice to the pawner. (Story on Bail. §§ 308, 310; 2 Kent's Com. 582.) No interposition of a court was invoked by the defendants, but, after default in payment, they sold the goods at public auction, and it is insisted that the sale was void, because no notice of the sale was given to the pawner.

It seems to me that there are two complete and satisfactory answers to this objection. One is that the notice was waived by agreement of parties. The stipulation in the agreement as to the sale confers no additional authority on the pledgees, and would be entirely nugatory and inoperative unless it had this effect. If it did not waive the notice, it did nothing, for the pledgees had a right, upon a mere naked pledge, to sell on default after notice, and if the parties meant any thing by this stipulation, they intended it should operate and it could operate only by waiving the notice. (Story on Bail. § 308; Cross on Lien, 66.)

But even if it did not, the notice that was given was enough. The notice required is not of the time and place of sale, but of the intention of the pledgee to enforce his lien, so as to warn the pledger that he must redeem in time. (2 Story Eq. Jur. § 1033; Story on Bail. §§ 308, 310; 2 Caines' Cases in Er. 200; *Garlick* v. *James*, 12 J. R. 146; *Patchin* v. *Pierce*, 12 Wend. 61.)

In December, 1843, the defendants gave the plaintiff notice of the amount of their claim, and that if he did not pay the amount and take the casks away, the defendants would sell them according to agreement. He made no objection to the

Haskins v. Patterson & Ballentine.

amount, but promised to call the following week and arrange it. He thus had the required opportunity to redeem, and was warned that defendants meant, on his default, to enforce their lien. He did not avail himself of the opportunity, and in February following the property was sold, according to the terms of the agreement. And it was not until two or three months afterward that he sought to redeem. But he was then too late. By the force of his agreement, and by operation of law, the title had passed away from him, and his right to the property had ceased.

In this view of the case, the verdict ought to have been for the defendant, and I would order judgment to be entered accordingly, were it not for a doubt which I entertained on the trial, and which is not yet fully removed, viz.: whether the sale was in all respects fair. The goods were all sold in one parcel, at the instigation of the auctioneer, to be sure, without any directions from defendants, but so that they were liable for any fatal irregularity on his part. It may have been right so to sell them, but, whether it was or not, was a question of fact which ought to have been submitted to the jury. If they had found that the sale was not conducted in good faith, the defendants might, notwithstanding their right to sell, have been wrong-doers, and liable in this action. I therefore shall order a new trial to determine that question.

The property also ultimately fell into the defendant's hands. Whether this was fairly and properly done ought, also, to have been submitted to the jury, for the pawnee can never become the purchaser at the sale. (Story on Bail. § 319.)

I have not considered the question of recoupment raised on the argument, because, in the view which I have taken of the case, it was unnecessary. It may, however, be as well to remark in that regard, that under the ruling of our Supreme Court, in *Barber* v. *Rose*, 5 Hill, 81, this defense could not avail the defendants unless it had been pleaded, and if the case goes to a new trial, it may be necessary for them to amend their pleadings.

New trial granted, costs to abide the event.